UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SHAWN GREEN,

                    Plaintiff,

         -against-                                    9:22-CV-00044 (LEK/ML)

JEFF MCKOY, *et al.*,

                    Defendants.

---

**MEMORANDUM-DECISION AND ORDER**

## I.       INTRODUCTION

On January 20, 2022, pro se Plaintiff Shawn Green commenced this civil rights action against various individuals employed by the State of New York (collectively, "Defendants") pursuant to 42 U.S.C. §§ 1983, 1985(2), 1985(3), for violations of Plaintiff's rights secured by the Eighth and Fourteenth Amendments to the United States Constitution. Dkt. No. 1 ("Complaint") ¶ 1. After Plaintiff filed the Complaint, an attorney from the New York State Attorney General's Office appeared on behalf of Defendants Jeff McKoy, Donald E. Venettozzi, Patrick G. Morrissey, Rachel A. Young, Michael Kirkpatrick, Theodore C. Zerniak, Donita E. McIntosh, Sharon Benson-Perry, Jessica M. Thomas, Angela J. Benware, Christopher Miller, Kenneth B. McKeighan, Marvin E. Hawk, Sean M. Detota, Paul P. Woodruff, Sandra L. Danforth, and Donna J. Mainville (collectively, "State Defendants"). Dkt. Nos. 5, 14. Now before the Court are (1) Plaintiff's objections challenging three orders issued by the Honorable Miroslav Lovric, United States Magistrate Judge, Dkt. No. 19 ("Plaintiff's Appeal"); and (2) the State Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), Dkt. No. 15 ("Motion to Dismiss"). For the reasons that follow, the Court denies Plaintiff's Appeal, and grants in part and denies in part the State Defendants' Motion to Dismiss.

## II.    BACKGROUND

### A.  Factual Allegations

The following allegations are set forth in Plaintiff's Complaint, and his attached exhibits, Dkt. No. 1-1, which the Court accepts as true for the purpose of deciding the Motion. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (recognizing the "tenet that a court must accept as true all of the [factual] allegations contained in a complaint" when ruling on a motion to dismiss for failure to state a claim); see also Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim . . . a district court must limit itself to facts stated in the complaint or *in documents attached to the complaint as exhibits* . . . ." (emphasis added)).

On March 19, 1996, Plaintiff committed robbery in the first degree in Brooklyn, New York. Compl. ¶ 15. "On January 15, 1997[,] Plaintiff received a maximum determinate sentence of 25 years, that included an original conditional release . . . date of August 12, 2017." Id. ¶ 16.

On December 12, 2016, while he was incarcerated at the Clinton Correctional Facility ("Clinton"), Plaintiff was "involuntarily assigned to" Clinton's Alcohol and Substance Abuse Training Program ("ASAT") on a temporary basis "[un]til it could be . . . determined and confirmed whether he needed the program." Id. ¶ 21 n.1. However, according to Plaintiff, that determination never came. Id. ¶ 23. Then, on January 22, 2017, Plaintiff was "discharged" from ASAT "due to [his] violation of [ASAT's] treatment standards." Dkt. No. 1-1 at 50.[1]

On April 19, 2017, while still incarcerated at Clinton, "Plaintiff appeared before [the] Clinton Time Allowance Committee ('TAC') . . . to discuss his [conditional release] date status."

---

[1] For the avoidance of doubt, the Court uses the page numbers generated by ECF—the Court's electronic filing system—when referring to specific pages in filings on the docket, including Plaintiff's exhibits filed at Docket Number 1-1, and all of the parties' memoranda of law.

Compl. ¶ 17. After this hearing, "the TAC decided to 'withhold all good time until [Plaintiff's] completion of ASAT and ART,'" i.e., Aggression Replacement Training. Id. ¶ 18 (quoting Dkt. No. 1-1 at 2). This decision delayed Plaintiff's earliest release date to March 10, 2021. Dkt. No. 1-1 at 15. "'[U]pon completion,'" Plaintiff could "'request reconsideration,'" so long as he also "'maintain[ed] [a] positive disciplinary [record].'" Compl. ¶ 18 (quoting Dkt. No. 1-1 at 2). On April 26, 2017, Kirkpatrick, the Clinton Superintendent at the time, "confirmed the TAC recommendation to withhold all of Plaintiff's good time." Compl. ¶ 19. On May 12, 2017, an unnamed designee of Deputy Commissioner of Program Services ("DCP") McKoy—identified by Plaintiff as "Jane/John Doe"—also affirmed the TAC recommendation. Id. ¶ 20.

That same day, Plaintiff signed a "program refusal notification," by which Plaintiff refused to participate in ASAT because Plaintiff had "no such need for a program or any alcohol abuse/drug addiction requiring said program placement." Id. ¶ 21 (citing Dkt. No. 1-1 at 3). The following month, on June 14, 2017, Plaintiff sent "a formal complaint . . . inquiring into [the] unrequired ASAT program for" conditional release to DCP McKoy. Id. ¶ 24. Two days later, on June 16, 2017, Plaintiff completed ART. Id. ¶ 22 (citing Dkt. No. 1-1 at 5).

On June 28, 2017, Plaintiff "forwarded" additional letters "regarding his need for ASAT" to Deputy Superintendent of Program ("DSP") McIntosh and Deputy Superintendent of Security ("DSS") Zerniak. Id. ¶¶ 25–26. On July 27, 2017, "DSP McIntosh informed Plaintiff" in "an interdepartmental memorandum" that his letter had "'been forwarded to [Senior Counselor ('SC')] Benson-Perry . . . for review and appropriate response.'" Id. ¶ 28 (quoting Dkt. No. 1-1 at 11).

Meanwhile, Plaintiff submitted a grievance to Clinton's Inmate Grievance Program office, which was "filed and assigned log number 71993-17[]" on August 17, 2017. Id. ¶ 29.

Plaintiff's exhibits indicate that he filed this grievance for being held beyond his original conditional release date of August 12, 2017. See Dkt. No. 1-1 at 15. On September 11, 2017, the "Inmate Grievance Resolution Committee ('IGRC') denied Plaintiff['s] grievance," Compl. ¶ 31, which he subsequently appealed to Superintendent Kirkpatrick, Dkt. No. 1-1 at 13.

On September 8, 2017, Plaintiff received "a standardized interdepartmental letter" from DCP McKoy, informing Plaintiff that "his need for ASAT [had] 'been reviewed and [was] upheld.'" Compl. ¶ 30 (quoting Dkt. No. 1-1 at 12). Four days later, on September 12, 2017, SC Benson-Perry also responded to Plaintiff's concerns about his participation in ASAT, Compl. ¶ 32, advising that:

> The only way to finally determine whether or not you have an ASAT need is for you to accept the program for at least 30 days. During that time frame[,] assessments will be done to make a final decision as to whether or not you need the program. If it is determined that you DO NOT need to continue with ASAT, you are then free to request restoration of your good time. Until then, restoration will not be considered.

Dkt. No. 1-1 at 14.

On October 20, 2017, Superintendent Kirkpatrick denied Plaintiff's grievance appeal regarding Plaintiff's original conditional release date. Compl. ¶ 33 (citing Dkt. No. 1-1 at 15). Three days later, Plaintiff appealed Superintendent Kirkpatrick's denial to the Central Office Review Committee ("CORC") of the New York State Department of Corrections and Community Supervision ("DOCCS"). See Dkt. No. 1-1 at 15.

The following year, in July 2018, Plaintiff signed another "program refusal notification," but this time for a "Transitional Services Phase II" class led by Counselor Benware. Dkt. No. 1-1 at 16. However, Plaintiff alleges that when he signed this form, Counselor Benware "concealed

the fact [that] said class would satisfy Plaintiff's Transitional Services Phase [II] requirement prior to his release from DOCCS custody." Compl. ¶ 27.

On January 16, 2019, the CORC "'unanimously denied'" Plaintiff's grievance on appeal, id. ¶ 34 (quoting Dkt. No. 1-1 at 18), noting that the TAC's "recommendation in April 2017 for loss of all available good time due to the grievant's non-completion of ASAT and ART was affirmed by [DCP McKoy's] designee on 5/8/17," and "that TAC decisions are considered non-grievable in accordance with Directive #4040, 701.3 (e) (2)," Dkt. No. 1-1 at 18. The CORC reiterated earlier advice "that upon completion of ART and ASAT [Plaintiff] may write to the TAC Chairman to request reconsideration of his loss of good time." Id.

On February 8, 2019, Plaintiff sent "a letter of inquiry as to Plaintiff's ASAT need" to ASAT Supervisor Morrissey. Compl. ¶ 35 (citing Dkt. No. 1-1 at 19). On February 26, 2019, ASAT Director Young responded in a letter asserting that Plaintiff's "'established need to participate in substance abuse treatment is correct,'" Id. ¶ 36 (quoting Dkt. No. 1-1 at 20), and further noting that Plaintiff's "record indicates a self-admitted history of marijuana abuse," Dkt. No. 1-1 at 20. On March 4, 2019, Plaintiff responded to Young's letter in a March 4, 2019, letter, seeking "'documentary proof of [his] "self-admitted history of marijuana abuse.'"" Compl. ¶ 37 (emphasis in original) (quoting Dkt. No. 1-1 at 21). Young responded again with a letter dated March 11, 2019, stating that "'[t]his issue was addressed in previous correspondence from this office dated, February 2[6], 2019.'" Id. ¶ 38 (quoting Dkt. No. 1-1 at 22).

Two months later, Plaintiff was transferred to Upstate Correctional Facility ("Upstate"). Following a new assessment at Upstate on May 29, 2019, "Plaintiff's need for ASAT was deemed to have been an error in judgment." Id. ¶ 39 (citing Dkt. No. 1-1 at 23). In light of this change, Plaintiff wrote to the Upstate Inmate Records Coordinator ("IRC") Mainville "to be

rescheduled for reconsideration of good time allowance. Id. ¶ 40. IRC Mainville replied in an "interdepartmental memo," informing Plaintiff that "his whole record [would] be reviewed at the June [2019] TAC meeting, 'which [would] not require [Plaintiff's] presence.'" Id. ¶ 41 (quoting Dkt. No. 1-1 at 25). At a meeting held on June 19, 2019, the Upstate TAC "recommended" that "only one year of [P]laintiff's previously withdrawn good-time . . . [be] restor[ed]." Id. ¶ 42 (citing Dkt. No. 1-1 at 26). The Upstate TAC gave only one year back to Plaintiff because the TAC "fe[lt] [that] [Plaintiff's] refusal to participate in the mandatory [Transitional Services] Phase [II] program and his refusal to actively participate in [a] vocational [program] warrants not restoring all good time." Dkt. No. 1-1 at 26. On June 20, 2019, Upstate Superintendent of Administration Danforth "confirmed the TAC recommended restoration." Compl. ¶ 43. The next day, an unnamed designee of DCP McKoy—identified by Plaintiff as "Jane/John Doe"—also affirmed the TAC recommendation. Id. ¶ 44. Plaintiff's conditional release date was then reset to March 10, 2020. Dkt. No 1-1 at 27.

Later that summer, Plaintiff was transferred to Great Meadow Correctional Facility ("Great Meadow"). Shortly after this transfer, Plaintiff was issued an "inmate misbehavior report" on August 23, 2019. Compl. ¶ 45 (citing Dkt. No. 1-1 at 28). A copy of the report, provided by Plaintiff in his exhibits, states that Great Meadows Correction Officer ("C.O.") Detota "observed [Plaintiff] destroying the emergency fire sprinkler head in Hospital Isolation Room #3," which resulted in "[d]amage to [s]tate [p]roperty," and "flooding [of] the Isolation Room, the outer vestibule[,] and a large portion of the Hospital 2nd floor." Dkt. No. 1-1 at 28. Plaintiff, however, alleges that the report was issued "for a spinkle[r] device malfunction," Compl. ¶ 45, and that an unnamed Area Supervisor John Doe "endorse[d]" C.O. Detota's allegations "without substantial proof to corroborate Plaintiff's involvement," id. ¶ 46.

Great Meadow Review Lieutenant Hawk ranked the incident as "a tier III" violation, "the highest grade of disciplinary sanctions permissible." Id. ¶ 47 (citing Dkt. No. 1-1 at 29). As a result, Plaintiff was placed in a special housing unit ("SHU") on August 23, 2019, and Plaintiff remained there for thirty days.[2] Id. ¶ 76; see also Dkt. No. 1-1 at 29.

On September 9, 2019, at a hearing regarding the misbehavior report, Great Meadow Industry Superintendent ("IS") McKeighan "recommended one month [of] good time be withdrawn from Plaintiff." Compl. ¶ 48. On October 16, 2019, Plaintiff then appealed this determination to Director of Special Housing Venettozzi. Id. ¶ 50 (citing Dkt. No. 1-1 at 32). Meanwhile, a non-party Freedom of Information Law ("FOIL") officer informed Plaintiff that she could not provide a tape of the hearing because "'[t]he entire hearing did not record.'" Id. ¶ 51 (quoting Dkt. No. 1-1 at 35).

On November 3, 2019, Plaintiff appeared before the Great Meadow TAC. Id. ¶ 49. "[I]nstead of" withdrawing just "one month" of good time, the TAC decided to withdraw "eleven months . . . until the completion of Phase II," assuming "no further disciplinary sanctions." Id. ¶ 49 (citing Dkt. No. 1-1 at 38).

On November 12, 2019, Director Venettozzi denied Plaintiff's October 16, 2019, appeal and affirmed IS McKeighan's recommended loss of good time. Id. ¶ 52 (citing Dkt. No. 1-1 at 36). Five days later, "Plaintiff submitted a [d]iscretionary [r]eview appeal . . . to Great Meadow Superintendent Miller." Id. ¶ 53 (citing Dkt. No. 1-1 at 37). On November 21, 2019, Superintendent "Miller confirmed the TAC recommendation to withhold the remaining eleven

---

[2] In his Response to the State Defendants' Motion to Dismiss, Plaintiff has added that during this time in SHU, "a water deprivation as well as a shield order was issued on Plaintiff by [the] Deputy Superintendent of Security [at Great Meadow] . . . ." Dkt. No. 23 ("Plaintiff's Response") at 14. However, the only Deputy Superintendents of Security named as Defendants in this action are DSS Zerniak of Clinton and DSS Woodruff of Upstate. See Compl. at 1.

months of good time allowance Plaintiff [had] been restored." Id. ¶ 55 (citing Dkt. No. 1-1 at

38). Eight days later, an unnamed designee of DCP McKoy—identified by Plaintiff as

"Jane/John Doe"—also "affirmed the TAC recommendation to withhold the remaining eleventh

months of Plaintiff's . . . restored good time allowance." Id. ¶ 56 (citing Dkt. No. 1-1 at 38).

Then, on December 3, 2019, DSP McIntosh "informed Plaintiff . . . '[t]here will be no additional

consideration given to this matter.'" Id. ¶ 54 (quoting Dkt. No. 1-1 at 40).

Plaintiff later completed the Transitional Services Phase II program on February 16,

2020, "and [was] schedule[d] for TAC reconsideration in the weeks that followed." Id. ¶ 57. On

February 27, 2020, "Plaintiff reappeared before Great Meadow's TAC at which the eleven

months good time previously withheld was recommended [to] be restored." Id. ¶ 58 (citing Dkt.

No. 1-1 at 41). An unnamed "Jane/John Doe confirmed the TAC recommendation" on February

28, 2020. Id. ¶ 59 (citing Dkt. No. 1-1 at 41). The next day, an unnamed designee of DCP

McKoy—identified by Plaintiff as "Jane/John Doe"—also "affirmed the TAC['s] recommended

restoration . . . ." Id. ¶ 60 (citing Dkt. No. 1-1 at 41). Shortly thereafter, Plaintiff's new

conditional release date was reset to April 10, 2020. Dkt. No. 1-1 at 42.

On April 9, 2020, "Plaintiff [was] release[d] from DOCCS custody to serve the

remain[der] of his sentence on [p]arole supervision until March 9, 2021." Compl. ¶ 61.

"Shortly[] after being on parole[,] it [was] determine[d] by an outpatient treatment service case

manager . . . 'that [Green] doesn't meet [the substance abuse] treatment criteria.'" Id. ¶ 62

(quoting Dkt. No. 1-1 at 47).[3]

---

[3] Plaintiff has provided a letter from the outpatient treatment service case manager to support this
allegation. See Dkt. No. 1-1 at 47. However, the letter refers to a "Jamel McGougain" not
qualifying for treatment, as opposed to Shawn Green—Plaintiff's name in this action. See id.

In light of these facts, Plaintiff argues he was "unjustly incarcerated," for "an additional 996 days or 2 years, 7 months, and 23 days," past his original conditional release date of August 17, 2017. Id. ¶ 63. Plaintiff notes that during this period of "additional" incarceration, id., he "informed . . . Thomas . . . his assigned counselor, on numerous occasions during callouts, that his ASAT need [was] wrong and had to be corrected," but she "made no effort to do so," id. ¶ 65. He contends that Defendants' actions, as described throughout the Complaint, amount to several violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Id. ¶ 1.

### B. Procedural History

These events led Plaintiff to commence this pro se civil rights action pursuant to 42 U.S.C. §§ 1983 ("Section 1983"), 1985 ("Section 1985"), seeking monetary, declaratory, and injunctive relief to remedy these alleged violations of his constitutional rights. See Compl. ¶¶ 1–3. Plaintiff did not seek to proceed in forma pauperis, and instead paid the required filing fee when he filed his Complaint. See Dkt. No. 1-3. In the caption of the Complaint, Plaintiff identified the seventeen individual State Defendants by name. See Compl. at 1. He also listed four "Jane" and "John Doe" Defendants, as well as unidentified CORC "members." See id.

On February 23, 2022, the Clerk of the Court issued summons for the seventeen State Defendants and the unidentified CORC members. Dkt. No. 2. That same day, the Court issued a Text Notice informing Plaintiff that:

> The Clerk's Office will not issue summons(es) for service of process on a John Doe defendant(s) at this time. In the event plaintiff wishes to pursue the claims against this defendant, plaintiff shall take reasonable steps to ascertain their identity. When plaintiff determines the identity of the John Doe defendant(s), plaintiff may seek to amend the pleading to add the properly named defendant(s) pursuant to FED. R. CIV. P. 15 and summons(es) will be issued at that time.

Dkt. Text Notice (Feb. 23, 2022). In a separate Text Notice, the Court also cautioned Plaintiff

that "[b]ecause [he] has paid the filing fee . . . he is responsible for serving the summons,

[C]omplaint, and General Order 25 on each defendant in accordance with Fed.R.Civ.P. 4(c)."

Dkt. No. 4. The Court also "warned" Plaintiff "that failure to serve the summons, [C]omplaint,

and General Order 25 on the defendants . . . may ultimately result in dismissal of this action for

failure to prosecute." Id.

        In a March 23, 2022, Text Order, the Court issued a similar warning to Plaintiff, and sua

sponte extended his time to serve the summons, Complaint, and General Order 25 to April 5,

2022. Dkt. No. 7. Should Plaintiff be unable to complete service by that date, the Court

"directed" Plaintiff to file "a detailed status report explaining why service has not be[en]

completed as to each Defendant." Id. That same day, the Court received a letter from Plaintiff

enclosing documentation of numerous requests for waivers of service that he sent to various

Defendants in late February 2022. See Dkt. No. 8.

        On April 20, 2022, the Court received and filed a letter motion from Plaintiff requesting

"an order directing Defendants to answer" interrogatories Plaintiff issued to Defendants on

January 14, 2022, to gather more information on the "Jane/John Doe Defendants . . . ." Dkt. No.

9 at 1. In the same letter motion, Plaintiff also asked for another "extension of time to complete

service . . . ." Id.

        On April 21, 2022, Judge Lovric denied the letter motion, stating: "It is unclear what

relief, if any, Plaintiff is requesting and what the grounds are for that relief. In addition, the Court

notes that Plaintiff's request indicates that he served interrogatories on Defendants dated

1/14/2022, which was before the filing of this case." Dkt. No. 10 ("April 2022 Discovery

Denial"). A copy of this Text Order was served on Plaintiff via regular mail. See id.

10

On April 29, 2022, Plaintiff drafted and signed a letter motion seeking reconsideration of the April 2022 Discovery Denial, which the Clerk of the Court received and filed on May 4, 2022. Dkt. No. 11 ("Reconsideration Motion"). In the Reconsideration Motion, Plaintiff argued that he was entitled to reconsideration primarily because "no efforts have been made by Defendants nor [DOCCS] to provide the identities as well as mailing addresses of Jane and John Doe Defendants set forth [in the] [C]omplaint, since being served with . . . Plaintiff's Interrogatory Demands all dated January 14, 2022." Id. ¶ 2. Plaintiff added: "Unless DOCCS or [the] Attorney General's [O]ffice would accept service on Jane and John Doe Defendants . . . provide their identities[,] and waive[]" service, id. ¶ 8, then the Court must "exten[d] [Plaintiff's] time to complete service upon unserved Defendants" and issue "an order to accomplish such," id. ¶ 9.

On May 6, 2022, Judge Lovric denied the Reconsideration Motion. Dkt. No. 12 ("May 2022 Reconsideration Denial"). That same day, Judge Lovric issued a separate Text Order finding that the deadline for Plaintiff to serve the summons, Complaint, and General Order 25 on each Defendant had once again "expired." Dkt. No. 13 ("May 2022 Service Order"). Judge Lovric also sua sponte extended Plaintiff's time to serve the summons, Complaint, and General Order 25 to May 27, 2022. Id. He further instructed that should Plaintiff be unable to complete service by that date, the Court again "directed" Plaintiff to file "a detailed status report explaining why service has not be[en] completed as to each Defendant." Id.

By May 23, 2022, an attorney from the New York State Attorney General's Office had appeared on behalf of the seventeen individual State Defendants. See Dkt. Nos. 5, 14. That same day, the State Defendants filed their Motion to Dismiss pursuant to Rule 12(b)(6) primarily on the grounds of collateral estoppel and failure to state a claim. See Mot. to Dismiss; see also Dkt.

No. 15-10 ("Defendants' Memorandum") at 4–5. Notably, the State Defendants did not move to dismiss the Complaint on Rule 12(b)(5) grounds for insufficient service of process. See Mot. to Dismiss.

Three days later, on May 26, 2022, the Clerk of the Court received a copy of Plaintiff's objections to Judge Lovric's April 2022 Discovery Denial, May 2022 Reconsideration Denial, and May 2022 Service Order, which Plaintiff appears to have signed on May 20, 2022. See Pl.'s Appeal at 11. In his Appeal, Plaintiff also "requested [he] be forwarded a copy of [the] docket sheet including the filing of [his Appeal] documents[,] as well as . . . [the] Letter Motion entered as [D]ocket [Number] 6, which . . . [Plaintiff] never received . . . ." Id. at 1.

Subsequently, Plaintiff filed his Response to the State Defendants' Motion to Dismiss, see Pl.'s Resp., and the State Defendants replied, Dkt. No. 26 ("Defendants' Reply"). The State Defendants never filed a response to Plaintiff's Appeal. See Docket.

## III.   PLAINTIFF'S APPEAL

Given that Plaintiff's Appeal concerns rulings that Judge Lovric issued before the State Defendants filed their Motion to Dismiss, the Court will address Plaintiff's Appeal first. While the Court has some doubts regarding the timeliness of Plaintiff's Appeal, see generally Fed. R. Civ. P. 5(d)(2), 72(a), the Court proceeds to the merits of the Appeal in light of Plaintiff's pro se status, see generally Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (noting that pro se litigants "should not be impaired by harsh applications of technical rules").

### A.  Legal Standard

District courts may designate a magistrate judge to hear and decide a pretrial matter that is "not dispositive of a party's claim or defense." Fed. R. Civ. P. 72(a). For such non-dispositive matters, the district judge "must consider timely objections and modify or set aside any part of

the order that is clearly erroneous or is contrary to law." Id.; see also 28 U.S.C. § 636(b)(1)(A).

"An order is clearly erroneous only if a reviewing court, considering the entirety of the evidence, is left with the definite and firm conviction that a mistake has been committed; an order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay, 954 F. Supp. 2d 127, 139 (E.D.N.Y. 2013) (cleaned up). "This standard of review is highly deferential, and magistrate judges are afforded broad discretion in resolving non-dispositive disputes; reversal is appropriate only if their discretion is abused." Rouviere v. DePuy Orthopaedics, Inc., 560 F. Supp. 3d 774, 783–84 (2d Cir. 2021) (cleaned up).

### B. Application to Judge Lovric's Orders

In his Appeal, Plaintiff argues that this Court should (1) "reject" or "modify" Judge Lovric's non-dispositive rulings, id. at 11; (2) grant a further "extension of time to complete service of the [C]omplaint," id. at 10; and (3) grant "assistance in identifying several [of the unnamed] Defendants," id. Plaintiff contends that this relief is warranted, in part, because Judge Lovric failed to acknowledge that "[a] district court 'must extend the time to serve if Plaintiff has shown good cause, and may extend the time to serve even in the absence of good cause.'" Id. at 9 (emphasis in original) (quoting Almukthar v. S&A Trading USA, Inc., No. 21-CV-0190, 2021 WL 5883416, at *4, *6 (N.D.N.Y. Dec. 13, 2021)). Plaintiff also submits that his objections are warranted because Judge Lovric failed to account for Valentin v. Dinkins, where the Second Circuit observed that "'appellate courts have found error in a trial court's refusal to assist a pro se plaintiff in identifying a defendant.'" Pl.'s Appeal at 9 (quoting Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1987)).

13

As an initial matter, Plaintiff is correct that under Rule 4(m), the Court "'<u>must</u> extend the time to serve if Plaintiff has shown good cause' . . . ." Pl.'s Appeal at 9 (emphasis in original) (quoting <u>Almukthar</u>, 2021 WL 5883416, at *4, *6). However, Plaintiff is incorrect that Judge Lovric somehow abandoned this rule in his challenged Text Orders. In fact, in the very last order that Plaintiff appeals—i.e., the May 2022 Service Order—Judge Lovric sua sponte extended Plaintiff's time to serve the summons, Complaint, and General Order 25 to May 27, 2022. <u>See</u> May 2022 Service Order. Judge Lovric even instructed that, should Plaintiff be unable to complete service by that date, Plaintiff should file "a detailed status report explaining why service has not be[en] completed as to each Defendant." <u>Id.</u> This instruction, by its very terms, is faithful to Rule 4(m), as it allowed Plaintiff yet another opportunity to show good cause for an extension, despite the prior deadline for service having already expired. The Court cannot conclude that Judge Lovric's repeated warnings that "[t]he deadline" to effect service "has expired" amount to an abuse of his discretion, especially when those same warnings clearly contemplated the possibility of future extensions upon a showing of good cause.

As for the <u>Valentin</u> argument, Plaintiff is also correct that in certain circumstances, "discovery may be necessary before a defendant may be fully identified." 121 F.3d at 75. But Plaintiff fails to show how Judge Lovric transgressed this principle by refusing to order the State Defendants to respond to Plaintiff's interrogatories before the Rule 16 conference.[4] While the

---

[4] Plaintiff also takes issue with Judge Lovric having "note[d] that Plaintiff's [discovery] request indicates that he served interrogatories on Defendants dated 1/14/2022, which was before the filing of this case." April 2022 Discovery Denial. Specifically, "Plaintiff is baffled as to why . . . the Court [would] assume . . . Defendants[] were 'served' with interrogatories in January 2022 without a summon[s] [or] complaint . . . ." Pl.'s Appeal at 8. But in making that statement, Judge Lovric was simply pointing out that in Plaintiff's initial discovery request, Plaintiff referred to his interrogatories as bearing a date of "1/14/2022," Dkt. No. 9, which was nearly a full week before the Clerk of the Court received and filed Plaintiff's Complaint on the docket. Regardless, this minor dispute has no bearing on the appeal, since Judge Lovric ultimately denied the

Court will not speculate about Judge Lovric's future intentions in the litigation, it would be perfectly consistent with <u>Valentin</u> for Judge Lovric to postpone authorizing any pretrial discovery to identify the unknown defendants until after the Court resolves the State Defendants' Motion to Dismiss.

Contrary to Plaintiff's suggestions, <u>Valentin</u> does not impose a strict rule on district courts requiring them to authorize discovery to identify unknown defendants at the earliest possible moment in a litigation. <u>See id.</u> at 75–76. Rather, it stands for the proposition that, before a district court dismisses a plaintiff's claims against unidentified defendants for failure to prosecute, it must ensure that the plaintiff has had a fair opportunity to discover their true identities and to join them to the action, should cognizable claims against them exist. <u>See id.</u> at 76 (applying Rule 41(b)); <u>accord</u> <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980) ("[T]he plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.").

While Judge Lovric has warned Plaintiff of the possibility that his claims against the unidentified Defendants could be dismissed for failure to prosecute at a later date, <u>see</u> May 2022 Service Order, Judge Lovric has not recommended any such dismissal to date. Therefore, the Court cannot conclude that Judge Lovric's rulings were clearly erroneous when he refused to order the State Defendants to respond to the interrogatories before the Court resolved the State Defendants' Motion to Dismiss. Accordingly, Plaintiff's Appeal is denied.

---

"premature" discovery request on another ground entirely—namely, that Plaintiff was seeking discovery before the Rule 16 conference. <u>See</u> May 2022 Reconsideration Denial ("The requests by Plaintiff seeking from the Court an Order directing discovery from Defendants is premature given that the Rule 16 conference has yet to be held.").

## IV.    THE STATE DEFENDANTS' MOTION TO DISMISS

Having ruled on Plaintiff's Appeal, the Court now proceeds to evaluate the State

Defendants' Motion to Dismiss pursuant to Rule 12(b)(6). "[A] judgment of dismissal pursuant

to Fed. R. Civ. P. 12(b)(6) can only be entered if a court determines that, as a matter of law, a

plaintiff failed to state a claim upon which relief can be granted . . . ." Melendez v. City of New

York, 16 F.4th 992, 1010 (2d Cir. 2021). "In determining if a claim is sufficiently 'plausible' to

withstand dismissal," id. (quoting Iqbal, 556 U.S. at 678), a court "accept[s] all factual

allegations as true and draw[s] all reasonable inferences in favor of the plaintiff," Trs. of Upstate

N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt., 843 F.3d 561, 566 (2d Cir. 2016) (citation

omitted). A court, however, need not accept "conclusory allegations or legal conclusions

couched as factual . . . allegations." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (quoting

Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013)). "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678

(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at

679 (quoting Fed. R. Civ. P. 8(a)(2)).

"In considering a motion to dismiss for failure to state a claim . . . a district court must

limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits

. . . ." Kramer, 937 F.2d at 773. However, "a district court . . . may also consider matters of

which judicial notice may be taken under Fed. R. Evid. 201." Id. Specifically, "a court may take

judicial notice of prior pleadings, orders, judgments, and other related documents that appear in

the court records of prior litigation and that relate to the case sub judice." Jianjun Lou v. Trutex,

Inc., 872 F. Supp. 2d 344, 349 n.6 (S.D.N.Y. 2012) (citations omitted). While "a court may take judicial notice of a document filed in another court to establish the fact of such a document," a court "cannot take judicial notice of the factual findings of another court." In re Olympia Off. LLC, 585 B.R. 661, 667 (E.D.N.Y. 2018).

"*Pro se* complaints are held to less stringent standards than those drafted by attorneys," and courts are "required to read [a] plaintiff's *pro se* complaint liberally, interpreting it as raising the strongest arguments it suggests." Johnson v. Darby, 142 F. Supp. 3d 275, 277 (E.D.N.Y. 2015) (emphasis in original). "However, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in [the Federal Rules]." Vega v. Artus, 610 F. Supp. 2d 185, 195–96 (N.D.N.Y. 2009) (emphasis in original) (footnotes omitted). And while the Second Circuit has repeatedly "said that a *pro se* litigant is entitled to 'special solicitude,'" Triestman v. Fed. Bur. Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (emphasis in original) (quoting Ruotolo v. I.R.S., 28 F.3d 6, 8 (2d Cir. 1994)), it has "also indicated that [courts] cannot read into *pro se* submissions claims that are not 'consistent' with the *pro se* litigant's allegations . . . or arguments that the submissions themselves do not 'suggest,' . . . ." Triestman, 470 F.3d at 477 (emphasis in original) (citations omitted). Courts "should [also] not 'excuse frivolous or vexatious filings by *pro se* litigants' . . . ." Id. (emphasis in original) (quoting Iwachiw v. State Dep't of Motor Vehicles, 396 F.3d 525, 529 n.1 (2d Cir. 2005)).

## A.  Issue Preclusion a/k/a Collateral Estoppel

The State Defendants first advocate for dismissal of the Complaint under Rule 12(b)(6) because of "the doctrine of collateral estoppel." Defs.' Mem. at 10. Specifically, the State

Defendants argue that Plaintiff already "litigated and lost" the issue of whether "Defendants collectively violated [Plaintiff's] constitutional rights . . . by failing to restore all of his good time before he was released from DOCCS' custody." Id. at 10–11. The State Defendants point to Plaintiff's "Article 78 Proceeding before both the Albany County Supreme Court and then by way of his appeal to the Third Department, Appellate Division." In sum, because "the New York State Courts [already] found that . . . Plaintiff's good time was properly calculated by . . . Defendants . . . Plaintiff's Complaint must be dismissed." Id. at 11.

In support of their argument for collateral estoppel, the State Defendants have provided the Court with several documents concerning Plaintiff's Article 78 proceedings: "Plaintiff's prior Article 78 Petition, the [Albany County] Supreme Court's decision on . . . Plaintiff's Article 78 Petition . . . Plaintiff's Notice of Appeal to the Third Department, Appellate Division [('Third Department')], the Parties' Briefs . . . Defendant[]s['] Motion to Dismiss, and the [Third Department]'s Decision and Order . . . ." Id. at 10 n.4 (citing Dkt. Nos. 15-2 to -9). Given that "a court is permitted to take judicial notice of and consider the complaints and the record generated in both actions" "when a motion to dismiss is premised on the doctrine of collateral estoppel," MMA Consultants 1, Inc. v. Republic of Peru, 245 F. Supp. 3d 486, 499–500 (S.D.N.Y. 2017) (cleaned up), this Court may consider all of these exhibits provided by the State Defendants in resolving the Motion.

### 1. The Article 78 Proceeding

Two months after the Upstate TAC restored "only one year of [P]laintiff's previously withdrawn good-time," Compl. ¶ 42 (citing Dkt. No. 1-1 at 26), Plaintiff commenced a pro se Article 78 proceeding against Anthony J. Annucci, the Acting Commissioner of DOCCS, in the Albany County Supreme Court, seeking a reversal of this good-time determination and his

immediate release from DOCCS custody, Dkt. No. 15-2 ("Article 78 Petition") at 11. In his

Article 78 Petition, Plaintiff largely recounted the same set of facts offered in his present

Complaint, compare id. at 6–7, with Compl. ¶¶ 15–44, 63, 65, with the notable exception of the

events that transpired after his transfer to Great Meadow in late August 2019, Compl. ¶¶ 45–62.

That difference exists because Plaintiff initiated his Article 78 proceeding before his transfer to

Great Meadow. Art. 78 Pet. at 11 (dating his Article 78 Petition in early August 2019); Compl. ¶

45 (recounting first set of events that occurred at Great Meadow on August 23, 2019).

       After recounting these facts from early 2017 to the summer of 2019, Plaintiff argued,

among other things, that the manner in which his good-time credits were initially revoked, and

only partially restored upon reconsideration, violated the Due Process Clause of the Fourteenth

Amendment. Art. 78 Pet. at 7–11 (arguing, for instance, that he had a "state-created liberty

interest" in his "good time" but that it was "arbitrarily abrogated," thereby violating procedural

due process). Plaintiff did not, however, advance any arguments about whether the same events

violated his rights under the Equal Protection Clause of the Fourteenth Amendment, or the Cruel

and Unusual Punishments Clause of the Eighth Amendment. See id.

       On November 27, 2019, the Albany County Supreme Court ordered that Plaintiff's

Article 78 Petition be dismissed, finding that "DOCCS acted well within its broad discretionary

authority in restoring only one year of petitioner's good time allowance." Dkt. No. 15-4 at 4. In

affirming DOCCS' determination, the Albany County Supreme Court noted that "[t]he

determination to withhold some or all of an inmate's good behavior allowance is a discretionary

one and 'will be upheld if made in accordance with law and premised upon a review of the

inmate's entire institutional record.'" Id. (citations omitted). However, in dismissing the Article

78 Petition, the court did not explicitly address Plaintiff's Fourteenth Amendment procedural due process argument. See id. at 2–4.

Shortly thereafter, Plaintiff filed a notice of appeal to the Third Department, challenging the dismissal of his Article 78 Petition. Dkt. No. 15-5. However, before the Third Department could reach the merits of Plaintiff's appeal, "[t]he Attorney General . . . advised th[e] Court that, while the appeal was pending, [Plaintiff] was conditionally released from the custody of [DOCCS]." Dkt. No. 15-9 at 3. Because of this, the Third Department ultimately dismissed the appeal as moot. Id. In dismissing the appeal as moot, the Third Department did not vacate the decision below. See id.

### 2.   The Law of Issue Preclusion

"Issue preclusion, also referred to as collateral estoppel, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to a prior judgment.'" Cayuga Nation v. Tanner, 6 F.4th 361, 374 (2d Cir. 2021) (quoting New Hampshire v. Maine, 532 U.S. 742, 784–49 (2001)); see also United States v. Jones, 43 F.4th 94, 101 n.3 (2d Cir. 2022) (noting that "[t]he Supreme Court 'has observed' that '"issue preclusion" is the more descriptive term'" (quoting Bravo-Fernandez v. United States, 580 U.S. 5, 137 n.1 (2016))). "As the Supreme Court made clear in Exxon Mobil, 'a federal court may be bound to recognize the . . . issue-preclusive effects of a state-court judgment' even if there is jurisdiction to hear the merits of the claim, and the claim is otherwise properly presented." McKithen v. Brown, 481 F.3d 89, 103 (2d Cir. 2007) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005)). "In determining whether . . . issue preclusion applies, [the] inquiry is governed by New York state law." McKithen, 481 F.3d at 103–04 (citing 28 U.S.C. § 1738 ("Such . . . judicial proceedings . . . shall have the same full faith and credit in every court

within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."), Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 93 (2d Cir. 2005), and Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518, 523 (1986)).

Under New York law, "[c]ollateral estoppel may be used to protect defendants who were not parties to the earlier proceedings from having to litigate issues previously raised and rejected when the plaintiff fully participated in the prior proceedings and where he or she had a full and fair opportunity to litigate all claims that were actually litigated or that could have been litigated in those proceedings." 73A N.Y. Jur. 2d Judgments § 359 n.1 (citing Prospect Owners Corp. v. Tudor Realty Servs. Corp., 689 N.Y.S.2d 55 (N.Y. App. Div. 1999), Corto v. Lefrak, 610 N.Y.S.2d 214 (N.Y. App. Div. 1994), and Conte v. Justice, 996 F.2d 1398 (2d Cir. 1993) (applying New York law)). The Second Circuit has referred to this particular use of issue preclusion as "non-mutual collateral estoppel . . . ." Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury, 270 Fed. App'x 52, 54 (2d Cir. 2008) (citing United States v. Ustica, 847 F.2d 42, 49 n.14 (2d Cir. 1988)).

In New York, "issue preclusion will apply only if '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'" Hoblock, 422 F.3d at 94 (alteration in original) (quoting Moccio v. New York State Office of Court Admin., 95 F.3d 195, 200 (2d Cir. 1996), abrogated on other grounds by Exxon Mobil, 544 U.S. 280). "The burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion . . . . In contrast, the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests

with . . . the party opposing the application of issue preclusion." Davis v. Proud, 2 F. Supp. 3d 460, 481 (E.D.N.Y. 2014) (quoting Proctor v. LeClaire, 715 F.3d 402, 414 (2d Cir. 2013)).

When applying New York law, the Second Circuit has previously stated in dicta that "[c]entral to a full opportunity to litigate is whether appellate review of an adverse holding was available. If not, full and fair litigation was absent and collateral estoppel does not apply." Johnson v. Watkins, 101 F.3d 792, 793 (2d Cir. 1996). In other words, "collateral estoppel [under New York law] will not bar reconsideration of an issue if there is an inability to obtain review or there has been no review, even though an appeal was taken." Id. at 795 (citing Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 44 (2d Cir. 1986), and People v. Sailor, 65 N.Y.2d 224, 229 (N.Y. 1985), cert. denied, 474 U.S. 982 (1985)) (other citations omitted).

New York courts have also found that a plaintiff's pro se status may be relevant to the determination of whether the party opposing the application of issue preclusion had a full and fair opportunity to litigate the issues sought to be precluded. However, a plaintiff's "status as a *pro se* litigant" does not, "by itself," preclude barring a claim under the doctrine of collateral estoppel . . . ." Cruz v. Root, 932 F. Supp. 66, 69 (W.D.N.Y. 1996) (emphasis in original) (applying New York state law) (citing West v. Ruff, 961 F.2d 1064, 1065–66 (2d Cir. 1992), and Clark v. Dep't of Correctional Servs., 564 F. Supp. 787, 788–89 (S.D.N.Y. 1983)). "If a *pro se* plaintiff is unfamiliar with the law and is unable to present evidence on his claim or if he fails to do so, collateral estoppel may be inappropriate." Bonilla v. Brancato, No. 99-CV-10657, 2002 WL 31093614, at *5 (S.D.N.Y. Sept. 18, 2002) (emphasis in original) (citation omitted). But if a pro se plaintiff, for instance, has "worked as a prison law librarian . . . filed [dozens of] lawsuits, and completed . . . courses in legal research," a court may still give preclusive effect to a prior decision. Id. (citation omitted).

### 3. *Issue Preclusion as Applied to Plaintiff's Case*

In their Motion to Dismiss, the State Defendants argue that "there is no dispute . . .
Plaintiff previously raised the exact same legal claims before the New York State Courts that he
now raises before this Court, namely, that . . . DOCCS [through the TAC] miscalculated . . .
Plaintiff's good time . . . ." Defs.' Mem. at 12. They add that "the Albany County Supreme Court
dismissed the . . . Article 78 Proceeding on this very issue," as well as "the Third Department"
when it "dismissed [his] appeal with respect to that same Petition." Id. at 12–13.

In his Response, Plaintiff attempts to distinguish the issues raised in his Article 78
Petition from those raised in his Complaint, see Pl.'s Resp. at 11, but he also emphasizes that the
Third Department never actually ruled on the merits of his appeal. Id. at 12. Rather, the Third
Department dismissed it as moot. Id. The State Defendants never grapple with the significance of
the mooted appeal in their Reply. See Defs.' Reply at 3 (with respect to collateral estoppel, only
arguing that Plaintiff in his Response "fails to provide sufficient proof to refute the [State]
Defendants' argument that . . . Plaintiffs' claims are barred").

Given that (1) the Third Department dismissed Plaintiff's appeal as moot, and (2) the
Second Circuit has stated that "collateral estoppel [under New York law] will not bar
reconsideration of an issue if . . . there has been no review, even though an appeal was taken,"
Johnson, 101 F.3d at 795, this Court has some doubts as to whether Plaintiff had a full and fair
opportunity to litigate the issues raised in the prior Article 78 proceedings.[5] For instance, a sister
court in the Second Circuit, while determining the preclusive effect of an Article 78 proceeding,
allowed a due process claim to proceed in federal court, despite a valid, adverse ruling from the

---

[5] The Court also has some doubts as to whether the issues raised and necessarily decided in the
Article 78 proceedings fully encompass the issues raised in the present Complaint. For instance,
Plaintiff's Complaint seeks recovery for events that occurred after he filed his Article 78
Petition. See Compl. ¶¶ 45–63.

Erie County Supreme Court denying that claim. See Shapard v. Attea, No. 08-CV-6146, 2009 WL 4042956, at *7 (W.D.N.Y. Nov. 19, 2009). The court arrived at this conclusion because the Fourth Department dismissed plaintiff's appeal from the adverse ruling as moot after DOCCS reversed the challenged disciplinary conviction. See id. The Court found that "to apply collateral estoppel/res judicata would penalize Plaintiff even though he was denied appellate review." Id. (citation omitted).

Whether this Court should adopt Shapard's approach in resolving the State Defendants' Motion to Dismiss on collateral estoppel grounds need not be decided today. That particular issue is not ripe for decision given the State Defendants' silence on the matter in their Reply. Cf. In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 892 F.3d 108, 111 (2d Cir. 2018) (finding that an issue was ripe for decision only after supplemental briefing). Assuming, without deciding, that Plaintiff has satisfied his burden to show that he did not have a full and fair opportunity to litigate the issues raised and necessarily decided in his Article 78 proceedings, the Court then proceeds to the merits of the State Defendants' Motion to Dismiss. Accordingly, the State Defendants' Motion to Dismiss based upon collateral estoppel is denied with leave to renew at a later time.

**B. Mootness**

Although the State Defendants have primarily advocated for dismissal of the Complaint on the grounds of collateral estoppel and failure to state a claim, the State Defendants have also asked this Court to dismiss Plaintiff's broad requests for declaratory and injunctive relief as "moot." Defs.' Mem. at 25. For instance, in Plaintiff's "first" and "second cause[s] of action," Plaintiff seeks "declaratory and injunctive relief for [himself] and those similarly situated against . . . [DCP] McKoy, [ASAT Supervisor] Morrissey[,] and ASAT Director Young" for "ongoing

24

and systemic [Eighth and Fourteenth Amendment] violations."[6] Compl. ¶¶ 73–74. The State

Defendants argue that "[i]t is well-settled in the Second Circuit that an inmate's transfer from a

prison facility moots the inmate's claims for declaratory and injunctive relief." Defs.' Mem. at

25 (citing Salahuddin v. Boord, 467 F.3d 263, 271 (2d Cir. 2006)) (other citations omitted). And

they point out that, in this case, "Plaintiff is no longer incarcerated." Id. at 26.

At the outset, the Court notes that this type of dismissal request is best construed as a

motion to dismiss pursuant to Rule 12(b)(1), as opposed to 12(b)(6), since the question of

whether intervening events have rendered a case "moot" implicates whether a federal court

retains jurisdiction over a case. See Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) (citing

Preiser v. Newkirk, 422 U.S. 395, 402 (1975)). However, the Court need not penalize the State

Defendants for this procedural oversight. The Court—regardless of whether the State Defendants

brought this to the Court's attention—has a sua sponte obligation to ensure that it has subject

matter jurisdiction over the actions it adjudicates. See Joseph v. Leavitt, 465 F.3d 87, 89 (2d Cir.

2006), cert. denied, 549 U.S. 1282 (2007).

It is also worth noting that a request for injunctive or declaratory relief "is not an

independent 'cause of action,' as Plaintiff suggests in his Complaint, but rather a specific prayer

for relief that seeks to remedy injuries related to the [underlying] causes of action in the

Complaint." Miller v. Syracuse Univ., No. 21-CV-1073, 2023 WL 2572937, at *10 (N.D.N.Y.

Mar. 20, 2023) (Kahn, J.) (citing Budhani v. Monster Energy Co., 527 F. Supp. 3d 667, 688

(S.D.N.Y. 2021)). While this Court has previously expressed skepticism of employing Rule

12(b)(6) to dismiss a prayer for injunctive relief, see Miller, 2023 WL 2572937, at *21, the Court

---

[6] If pro se Plaintiff wishes to bring a class action on behalf of similarly situated persons, he must
seek counsel to represent the alleged class. A non-attorney may not represent anyone other than
himself in a given litigation. Miller v. Zerillo, No. 07-CV-1719, 2007 WL 4898361, at *1
(E.D.N.Y. Nov. 2, 2007); see also 28 U.S.C. § 1654.

does not hesitate to dismiss prayers for relief for which a plaintiff lacks Article III standing, given that a plaintiff "must demonstrate standing . . . for each form of relief that is sought," id. at *10 (quoting Town of Chester, 581 U.S. 433, 439 (2017)).

Courts regularly dismiss requests for injunctive and declaratory relief based on conditions of incarceration after a prisoner has been released from prison, unless some exception applies. See Pugh v. Goord, 571 F. Supp. 2d 477, 489–90 (S.D.N.Y. 2008). Perhaps in light of that fact, Plaintiff, in his Response to the Motion to Dismiss, appears to have invoked the "capable of repetition, yet evading review" exception to mootness. See Pl.'s Resp. at 25 ("Plaintiff assume[s] it [has] escape[d] [the State Defendants'] train of thought that [the] remedies sought to prevent[] [are] curable[,] reoccurring wrong[s] during TAC proceedings that he personally experience[d]."). That "exception applies where '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" Pierre-Paul v. Sessions, 293 F. Supp. 3d 489, 492 (S.D.N.Y. 2018) (quoting Spencer v. Kemna, 523 U.S. 1, 17 (1998)).

While it is certainly plausible that the challenged actions of the State Defendants were too short in duration to be fully litigated prior to the expiration of his sentence in 2021, the Court cannot conclude that there is a reasonable expectation that Plaintiff will be subject to another TAC proceeding or DOCCS disciplinary action again. "Plaintiff could possibly encounter [such actions] again in the future if he were convicted of a new felony in New York State and sentenced to another term of [imprisonment], but such a controversy is too remote and speculative for adjudication, and thus not ripe for review." Newman v. Annucci, No. 17-CV-0918, 2022 WL 4133203, at *7 n.6 (N.D.N.Y. Sept. 12, 2022) (Kahn, J.); see also Pugh, 571 F.

Supp. 2d at 490 ("[The] . . . argument—that [the plaintiff] will likely end up in prison again, thus preserving his claim in the event of future incarceration—is meritless, speculative, and, on some level, highly insulting.").

Accordingly, Plaintiff's requests for injunctive and prospective declaratory relief against DCP McKoy, ASAT Supervisor Morrissey, and ASAT Director Young are dismissed for lack of subject matter jurisdiction.

### C.  Failure to State a Claim Pursuant to Rule 12(b)(6)

As for the underlying substantive claims raised in Plaintiff's Complaint, the State Defendants argue that, regardless of whether collateral estoppel applies, Plaintiff has failed to state any claims upon which relief may be granted, against any Defendant, including the defendants who remain unidentified and have not appeared in this action. Defs.' Mem. at 5 n.1.

#### 1.  Fourteenth Amendment Equal Protection Claims

In the Complaint, Plaintiff raises Fourteenth Amendment Equal Protection Clause claims against all Defendants, stating that they "exerted discriminatory acts against [him] in one form, fashion[,] or shape, that were totally inconsistent with standard policy and procedure . . . ." Compl. ¶ 85. "[S]aid treatment [was] wholly different from those similarly situated." Id. In moving to dismiss these claims, the State Defendants argue that Plaintiff's "vague and conclusory assertions are insufficient as a matter of law to state a claim for equal protection." Defs.' Mem. at 21.

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. "To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing

McCleskey v. Kemp, 481 U.S. 279, 292 (1987), and Kadrmas v. Dickinson Pub. Schs., 487 U.S. 450, 457–58 (1988)). As for a "class of one" discrimination claim, a plaintiff must show "that [she was] intentionally treated differently from other similarly-situated individuals without any rational basis." Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006) (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). Furthermore, a plaintiff bringing an equal protection claim "in the prison setting . . . must demonstrate that his treatment was not 'reasonably related to [any] legitimate penological interests.'" Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) (quoting Shaw v. Murphy, 532 U.S. 223, 225 (2001)).

Here, Plaintiff's Complaint is devoid of any factual allegations of intentional or purposeful discrimination directed at an identifiable or suspect class, such as an allegation that Defendants targeted Plaintiff because of his race, sex, or national origin. The Complaint is similarly lacking in any factual allegations suggesting that Defendants intentionally treated Plaintiff differently from other similarly situated individuals. In fact, the Complaint does not provide a single detail about how Defendants treated other individuals who were incarcerated at the same facilities as Plaintiff. All Plaintiff has provided in support of his Equal Protection claims are "legal conclusions couched as factual . . . allegations," Nielsen, 746 F.3d at 62, which are insufficient to withstand a motion to dismiss, Iqbal, 556 U.S. at 678. Accordingly, the Court grants the Motion to Dismiss with respect to Plaintiff's Equal Protection claims.

### 2. *Eighth Amendment Claims*

Plaintiff has also raised numerous Eighth Amendment claims against various Defendants, which the Court analyzes in turn below.

<u>a.</u>   <u>Concerning the Loss of Good Time</u>

Plaintiff brings several claims under the Eighth Amendment challenging various

Defendants' actions and omissions in connection with Plaintiff's good-time allowance for early

release from prison. These Defendants include: DCP McKoy, ASAT Supervisor Morrissey, and

ASAT Director Young, Compl. ¶ 73; C.O. Detota, Lt. Hawk, and "John Doe," <u>id.</u> ¶ 75; IS

McKeighan, Superintendent Miller, and Director Venettozzi, <u>id.</u> ¶ 76; DSP McIntosh, DSS

Zerniak, and "Jane Doe," <u>id.</u> ¶ 79; IRC Mainville, DSS Woodruff, and "Jane/John Doe," <u>id.</u> ¶ 81;

and "Reif"[7] and "Jane/John Does," <u>id.</u> ¶ 83. In seeking to dismiss these claims, the State

Defendants argue that such claims are not cognizable under the Eight Amendment, because the

loss of good-time credits does not "violate contemporary standards of decency," and there are

"no allegations that these Defendants were aware of or disregarded a substantial risk of serious

harm to . . . Plaintiff" when they revoked or did not fully restore Plaintiff's good time. Defs.'

Mem. at 15.

The Eighth Amendment prohibits the "inflict[ion]" of "cruel and unusual punishments

. . . ." U.S. Const. amend. VIII. While the Eighth Amendment "'does not mandate comfortable

prisons' . . . neither does it permit inhumane ones . . . ." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832

(1994) (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981)). Therefore, "[i]n order to

establish an Eighth Amendment violation, an inmate must show '(1) a deprivation that is

objectively, sufficiently serious that he was denied the minimal civilized measure of life's

necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official.'"

<u>Gonzalez v. Hasty</u>, 802 F.3d 212, 224 (2d Cir. 2015) (quoting <u>Gaston v. Coughlin</u>, 249 F.3d 156,

---

[7] It is unclear to the Court to whom "Reif" refers. Plaintiff did not list "Reif" as a defendant in the caption of his Complaint, <u>see</u> Compl. at 1, nor did he state any factual allegations concerning him in the "Facts" section of his Complaint, <u>see</u> <u>id.</u> ¶¶ 15–72.

164 (2d Cir. 2001)). "By prohibiting cruel and unusual punishment, the [Eighth] Amendment stands as a barrier against fundamental and shocking indecency to those whom the state has chosen to confine for their crimes." Anderson v. Coughlin, 757 F.2d 33, 36 (2d Cir. 1985). However, the Eight Amendment does not seek to prevent or minimize all the "deleterious effects" of confinement that may harm "the physical and mental well-being of prisoners." Id.

Despite Plaintiff's attempt to frame these claims as arising under the Eighth Amendment, the Court is unaware of any authority suggesting that an inmate's loss of good-time credit while in prison can ever amount to a violation of the Eighth Amendment, which mainly protects against "shocking indecency" to prisoners. Anderson, 757 F.2d at 36. Nevertheless, the Court need not rule out the possibility that such an authority exists, since Plaintiff here has failed to allege any plausible facts tending to show that Defendants were aware of or disregarded a substantial risk of serious harm to Plaintiff when they revoked or did not fully restore Plaintiff's good time. Accordingly, the Court grants the Motion to Dismiss with respect to Plaintiff's Eighth Amendment claims concerning the loss of good time.

### b.   Concerning Disciplinary Proceedings

Plaintiff also brings claims under the Eighth Amendment against C.O. Detota, Lt. Hawk, and "John Doe" for "personally impos[ing], authoriz[ing,] and uph[o]ld[ing] "arbitrary as well as capricious disciplinary proceedings . . . ." Compl. ¶ 75. While the Constitution does require a "'minimum'" level "'of procedural due process'" "[w]hen an inmate is charged with a rules violation that could lead to the loss of good-time credits or to confinement in SHU," Benitez v. Wolff, 985 F.2d 662, 665 (2d Cir. 1993) (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)), the Court is unaware of any authority suggesting that such alleged deprivations of due process could somehow amount to cruel and unusual punishment under the Eighth Amendment.

Accordingly, the Court grants the Motion to Dismiss with respect to Plaintiff's Eighth

Amendment claims regarding how the disciplinary proceedings were conducted. Such

allegations are best analyzed under the Fourteenth Amendment's Due Process Clause. See infra

Section IV.C.3.b.

c.   Concerning Conditions of Confinement in the SHU

Plaintiff also brings claims under the Eighth Amendment against C.O. Detota, Lt. Hawk,

IS McKeighan, Superintendent Miller, Director Venettozzi, and "John Doe" for the thirty days

that Plaintiff spent in the SHU. Compl. ¶¶ 75–76; see also id. ¶ 47. In seeking to dismiss these

claims, the State Defendants argue that "[t]he conditions of special housing units do not per se

constitute cruel and unusual punishment in violation of the Eighth Amendment," Defs.' Mem. at

16 (quoting Dixon v. Goord, 224 F. Supp. 2d 739, 748 (S.D.N.Y. 2002)), and that Plaintiff has

failed to provide any allegations that the various Defendants "acted with wantonness or what

Plaintiff suffered a serious deprivation of his basic human needs," id. at 17.

As stated earlier, while the Eighth Amendment "'does not mandate comfortable prisons'

. . . neither does it permit inhumane ones . . . .'" Farmer, 511 U.S. at 832 (quoting Rhodes, 452

U.S. at 349). The mere allegation that an inmate was confined in a special housing unit for a

certain number of days is not enough to adequately plead an Eighth Amendment violation. See,

e.g., Kingwood v. Coombe, No. 96-CV-0432, 1997 WL 323913, at *2, *7 (S.D.N.Y. June 13,

1997) (finding that an inmate who "spent over 200 days in [SHU] segregation" failed to state an

Eighth Amendment claim because he failed to provide "any allegations that [his] treatment in

SHU confinement was in some manner differed from usual SHU treatment"). Furthermore,

merely stating that one was "depriv[ed] of food, water, and lighting," does not, by itself, state an

Eighth Amendment claim. Warren v. Irvin, 985 F. Supp. 350, 357 (W.D.N.Y. 1997). A plaintiff

must provide plausible factual allegations tending to show that (1) the deprivations were "sufficiently serious," and that (2) the defendant-prison officials "acted with a sufficiently culpable state of mind." Id.

Here, Plaintiff has generally complained that his Eighth Amendment rights were violated by spending thirty days in the SHU, but has failed to offer any further details in his Complaint concerning the conditions of his confinement in the SHU. Even if the Court were to consider the additional factual allegations provided in Plaintiff's Response to the Motion to Dismiss—i.e., "a water deprivation as well as a shield order was issued on Plaintiff by [the unidentified] Deputy Superintendent of Security" at Great Meadow, Pl.'s Resp. at 14—Plaintiff would still fail to state an Eighth Amendment claim. "Nowhere has it been held that prisoners are entitled to complete and unfettered access to water or showers." Beckford v. Portuondo, 151 F. Supp. 2d 204, 211 (N.D.N.Y. 2001). "Where a prisoner alleges that he or she was denied drinking water in his or her cell, the resolution of the claim hinges on whether the prisoner received fluids at other times or suffered any adverse effects." DeBlasio v. Rock, No. 09-CV-1077, 2011 WL 4478515, at *17 (N.D.N.Y. Sep. 24, 2011). Although Plaintiff attacks the reasons for which the Great Meadow prison officials implemented the alleged water deprivation, see Pl.'s Resp. at 14, Plaintiff has not provided allegations regarding (1) the extent of the water deprivation, (2) whether he had access to any other fluids during meals, and (3) whether it caused any physical or mental harm, see id.; see also DeBlasio v. Rock, 2011 WL 4478515, at *17 (sua sponte dismissing an Eighth Amendment claim regarding an alleged water deprivation partly because "[t]here [was] no evidence that [the] [p]laintiff suffered any adverse effects from [it]"). His claims concerning the shield order lack a similar level of detail. Accordingly, the Court grants the Motion to Dismiss

with respect to Plaintiff's Eighth Amendment claims regarding his confinement in the SHU at Great Meadow.

### 3. Fourteenth Amendment Due Process Claims

Plaintiff has also raised numerous Fourteenth Amendment Due Process Clause claims against various Defendants, sounding in procedural due process.

#### a.   Concerning the Loss of Good Time and the TAC Procedures

Plaintiff alleges that various Defendants violated his right to procedural due process by revoking his good time and only partial restoring it without constitutionally guaranteed process. Compl. ¶¶ 74, 77–78, 80, 82, 84. In seeking dismissal of these claims, the State Defendants submit that Plaintiff has failed to identify any "liberty interest" of which he was deprived "without due process." Defs.' Mem. at 20.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. To state a valid procedural due process claim, a plaintiff must sufficiently allege: "(1) the existence of a property or liberty interest that was deprived; and (2) deprivation of that interest without due process." Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 218 (2d Cir. 2012). The requisite "liberty interest may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citing Wolff, 418 U.S. at 556–58). While the Supreme Court stated in Wolff that inmates have a liberty interest in avoiding withdrawal of good-time credits created pursuant to state law, see Wolff, 418 U.S. at 556–58, "no such interest has been recognized in the opportunity to earn good time credit where . . . prison officials have discretion to determine

whether an inmate or class of inmates is eligible to earn good time credit," <u>Abed v. Armstrong</u>, 209 F.3d 63, 66–67 (2d Cir. 2000).

With respect to the initial revocation of Plaintiff's good-time credits at Clinton in 2017, Plaintiff alleges that they were revoked arbitrarily because (1) he refused to participate in the ASAT program, which he did not need, and (2) the TAC proceedings that ultimately recommended the revocation were procedurally deficient under state law. On the first point, Plaintiff emphasizes that (a) Upstate later deemed his need for the ASAT program to be in error, Compl. ¶ 39, and that (b) after his release, an outpatient treatment service case manager confirmed that he had no such need, <u>id.</u> ¶ 62.

Even when construing Plaintiff's allegations liberally, the Court cannot conclude that Plaintiff has sufficiently alleged that it was arbitrary for Clinton officials to revoke Plaintiff's good-time credits based on his refusal to participate in the ASAT program. "[W]here good time credits constitute a protected liberty interest, a decision to revoke such credits must be supported by some evidence." <u>Superintendent, Massachusetts Corr. Inst., Walpole v. Hill</u>, 472 U.S. 445, 447 (1985). "[T]he relevant question is whether there is <em>any</em> evidence in the record that could support the conclusion reached by the disciplinary board." <u>Id.</u> at 455–56 (emphasis added).

Here, Plaintiff concedes in his allegations that he was afforded a hearing with the TAC before his good time credits were revoked, and that he was also presented with opportunities to rejoin ASAT and to appeal the revocation through Clinton's grievance procedures. <u>See</u> Compl. ¶¶ 17, 21, 29, 33–34. Plaintiff also fails to allege how the revocation of his good-time credits lacked the support of any evidence. Plaintiff, by his own admission, was asked to rejoin the ASAT program for evaluative purposes, in which he would have been permitted to leave the program after 30 days if the assessment had shown that the program was not warranted. <u>See</u> Dkt.

No. 1-1 at 14. Therefore, his conclusory assertion that he never needed the program in the first place, Compl. ¶ 21, and the fact that a later correctional facility found that he no longer needed to participate in the program, id. ¶ 39, cannot be read to render the 2017 revocation arbitrary.

Notably, New York law provides that good-time credits "may be withheld, forfeited or canceled in whole or in part for . . . failure to perform properly in the . . . [treatment] program assigned." N.Y. Correct. Law § 803(1)(a). While the Supreme Court in McKune v. Lile has suggested that it may be improper to revoke an inmate's good-time credits based on his refusal to participate in a sex offender program because of self-incrimination concerns, 536 U.S. 24, 38 (2002), and this Court subsequently agreed that revocation of good-time credits in those circumstances plausibly stated a Fifth Amendment claim, see White v. Mielnicki, No. 21-CV-0791, 2022 WL 4077782 (N.D.N.Y. Sept. 6, 2022) (Kahn, J.), those circumstances are patently distinguishable from the ASAT program. Here, there is no suggestion in the Complaint or Plaintiff's Response that participation in the ASAT program would have required Plaintiff to self-incriminate or otherwise violate his constitutional rights. Cf. Walter v. Fischer, 08-CV-0908, 2009 WL 3165841, at *6 (N.D.N.Y. Sept. 28, 2009), aff'd, 391 Fed. App'x 991 (2d Cir. 2010) (unpublished).

As for the allegedly deficient TAC proceedings in 2017, Plaintiff plainly admits that he "appeared before [the] Clinton Time Allowance Committee ('TAC') . . . to discuss his [conditional release] date status." Compl. ¶ 17. While Plaintiff broadly attacks the outcome of that hearing, he has not provided the Court plausible factual allegations in the Complaint suggesting that the TAC proceedings failed to comply with state law. See id. Even if the Court were to consider the allegation in his Response to the Motion to Dismiss that the "TAC never considered facts brought to its attention during [the] hearing by Plaintiff that throughout his

entire incarceration he had no history of alcohol addiction or substance abuse," Pl.'s Resp. at 20, Plaintiff would still fail to state a claim since, by his own allegations, SC Benson-Perry represented to him that "[t]he only way to finally determine whether or not you have an ASAT need is for you to accept the program for at least 30 days." Dkt. No. 1-1 at 14.

Plaintiff also takes issue with the partial restoration of his good-time credits at Upstate in 2019. Specifically, Plaintiff alleges that this later determination was made arbitrarily because (1) Counselor Benware "concealed the fact" that refusing to participate in the Transitional Services Phase II program would count against him in fully restoring his previously lost good-time credits, and (2) he was not allowed to appear at the TAC proceedings that ultimately recommended only partial restoration.

First, the Court again notes that prisoners have no liberty interest in the mere opportunity to earn good-time credits. See, e.g., Hirsch v. Pernat, 684 Fed. Appx. 53, 55–56 (2d Cir. 2017) (unpublished) ("[W]here 'good time' credits have not been earned [and are not currently owed to the prisoner] . . . there is no constitutionally protected interest in them because of the discretionary nature of their award."). Therefore, the allegation that Counselor Benware concealed the potential impact on good-time credits associated with refusing to participate in the Transitional Services Phase II program implicates no liberty interest, and therefore does not raise a cognizable issue of procedural due process. Even if it did (because Plaintiff was seeking to earn back good-time credits that had been previously revoked), the Court still has doubts that such a factual allegation regarding Counselor Benware would somehow render the TAC's determination arbitrary and not supported by any evidence. Again, New York law is clear that providing good-time credits "may be withheld, forfeited or canceled in whole or in part for . . . failure to perform properly in the . . . [treatment] program assigned." N.Y. Correct. Law §

36

803(1)(a). So long as the program bears a rational relationship to a legitimate penological objective, revoking good-time credits for failure to participate in that program does not infringe on an inmate's right to procedural due process. See Adams v. Annucci, 17-CV-3794 (KMK), 2020 WL 1489787, at *8–9 (S.D.N.Y. Mar. 27, 2020) (rejecting argument that prisoner "was forced to participate in [a rehabilitative program] without any screening or need for such treatment" and that he was thus "deprived of good time credits without due process of law," where rehabilitative program bore rational relationship to prisoner's conviction). Here, Plaintiff admits that he refused to participate in the Transitional Services Phase II program. That Counselor Benware allegedly did not fully inform him of the consequences of his refusal does not change the plain fact that he refused to participate—a fact that alone would support withholding some of his previously revoked credits.

Second, to the extent that Plaintiff suggests that TAC violated its own regulations by failing to invite him to the June 20, 2019, TAC hearing, see Compl. ¶ 41; Pl.'s Resp. at 19–20; such allegations are not actionable under Section 1983. "Violations of state law or regulations in themselves do not state viable section 1983 claims." LeBron v. Armitage, 08-CV-0508, 2011 WL 4566445, at *4 (N.D.N.Y. July 19, 2011), rep. and rec. adopted, 08-CV-0508, 2011 WL 4566439 (N.D.N.Y. Sept. 29, 2011), aff'd, 516 Fed. App'x 36 (2d Cir. 2013) (unpublished); accord Dixon, 224 F. Supp. 2d at 744. Furthermore, by the Plaintiff's own account, the June 20, 2019, TAC hearing adjudicated the possibility of earning good time credits that had previously been revoked, rather than losing existing credits; thus, there was likely no vested liberty interest at issue.

Having considered the rest of the Complaint in the light most favorable to Plaintiff, the Court ultimately agrees with the State Defendants that Plaintiff has failed to identify any "liberty

interest" of which he was deprived "without due process," when his good-time credits were revoked and then only partially restored. Defs.' Mem. at 20. Accordingly, the Court grants the Motion to Dismiss with respect to Plaintiff's Fourteenth Amendment procedural due process claims regarding the revocation and partial restoration of his good-time credits.

b. Concerning Disciplinary Proceedings

As noted above, Plaintiff brought claims under the Eighth Amendment against C.O. Detota, Lt. Hawk, and "John Doe" for "personally impos[ing], authoriz[ing,] and uph[o]ld[ing] arbitrary as well as capricious disciplinary proceedings," Compl. ¶ 75, but these claims are best construed as procedural due process claims under the Fourteenth Amendment, see supra Section IV.C.2.b. That is because the Fourteenth Amendment requires a "'minimum'" level "'of procedural due process'" "[w]hen an inmate is charged with a rules violation that could lead to the loss of good-time credits or to confinement in SHU," Benitez, 985 F.2d at 665 (quoting Wolff, 418 U.S. at 558). In seeking dismissal of these claims, the State Defendants argue that "[t]he Complaint contains no allegation that . . . Plaintiff was subject to any disciplinary proceeding placing a liberty interest at stake, much less that . . . Plaintiff was deprived of a liberty interest without due process." Defs.' Mem. at 20.

In the context of prison disciplinary proceedings, "the *only* process due an inmate is that minimal process guaranteed by the Constitution, as outlined in Wolff." Shakur v. Selsky, 391 F.3d 106, 119 (2d Cir. 2004) (emphasis in original). A disciplinary hearing that results in a revocation of a prisoner's good time credits or in his confinement in SHU satisfies due process if:

> (1) the prisoner is provided written notice of the disciplinary charges at least twenty-four hours in advance of the hearing;
>
> (2) a neutral and detached hearing body conducts the hearing;

> (3) the prisoner is afforded an opportunity to present evidence and call witnesses;
>
> (4) the prisoner is granted assistance, if necessary, to understand and prepare a defense; and
>
> (5) the factfinder provides a written statement of the evidence relied upon in making its decision and the reasons for the decision.

Wentzel v. Pliler, No. 21-CV-9245, 2022 WL 9798257, at *6 (S.D.N.Y. Oct. 17, 2022) (citing Wolff, 418 U.S. at 564, 559, 566, 580, and 563).

Plaintiff's Complaint is devoid of factual allegations suggesting that C.O. Detota, Lt. Hawk, or "John Doe" violated any of the aforementioned Wolff factors. The closest Plaintiff comes is his allegation that unnamed Area Supervisor John Doe "endorse[d]" C.O. Detota's allegations "without substantial proof to corroborate Plaintiff's involvement," id. ¶ 46. But that allegation against Area Supervisor John Doe is not a direct attack on the procedural sufficiency of the disciplinary hearing itself. Plaintiff's related allegation that he was unable to secure a tape of the hearing because "'[t]he entire hearing did not record,'" Compl. ¶ 51 (quoting Dkt. No. 1-1 at 35), also fails to attack the procedural sufficiency of the hearing. While Wolff requires that "the factfinder provides a written statement of the evidence relied upon in making its decision and the reasons for the decision," Wentzel, 2022 WL 9798257, at *6, the Court is unaware of any authority suggesting an inmate's procedural due process rights are violated when they are not provided with a tape of the hearing after its conclusion. Accordingly, the Court grants the Motion to Dismiss with respect to Plaintiff's Fourteenth Amendment procedural due process claims concerning the Great Meadow disciplinary hearing.

<u>c.</u>   <u>Concerning Conditions of Confinement in the SHU</u>

Plaintiff also brings Fourteenth Amendment procedural due process claims against various Defendants "for the 30 days he spent in SHU starting on August 23, 2019 . . . ." Compl. ¶¶ 77–78. In seeking dismissal of these claims, the State Defendants posit that "Plaintiff provides absolutely no facts to indicate or to support that his conditions in the SHU were either severe or extreme, and as such [his claims] for violations of due process based on his confinement in the SHU must fail." Defs.' Mem. at 20.

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" <u>Palmer v. Richards</u>, 364 F.3d 60, 64 (2d Cir. 2004) (quoting <u>Sandin v. Connor</u>, 515 U.S. 472, 484 (1995) (finding that thirty days' disciplinary segregation did not constitute atypical, significant hardship). While "there is no bright-line rule regarding the length or type of sanction that would give rise to an 'atypical and significant hardship,' this standard will not be met unless the disciplinary and administrative sanctions are onerous." <u>Jenkins v. Haubert</u>, 179 F.3d 19, 28 (2d Cir. 1999). When an inmate is confined in SHU for fewer than one hundred days, the inmate-plaintiff must typically show that "the conditions were more severe than . . . normal SHU conditions," or that the "relatively brief confinement[] under normal SHU conditions w[as], in fact, atypical." <u>Palmer</u>, 364 F.3d at 65 (citations omitted).

In this case, aside from Plaintiff's conclusory statements that his Fourteenth Amendment rights were violated by spending thirty days in the SHU, Plaintiff has provided the Court with no factual allegations to indicate or to support that the SHU conditions imposed an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Even if the

Court were to credit the additional factual allegations provided in Plaintiff's Response to the

Motion to Dismiss—i.e., "a water deprivation as well as a shield order was issued on Plaintiff by

[the unidentified] Deputy Superintendent of Security" at Great Meadow, Pl.'s Resp. at 14—

Plaintiff would still fail to state a Fourteenth Amendment claim. See, e.g., Williams v. Gumbula,

No. 13-CV-1132, 2018 WL 1801201 (W.D.N.Y. Mar. 5, 2018), at *9 (finding that "the brief loss

of in-cell water privileges certainly does not qualify as a protected liberty interest" sufficient to

make out a procedural due process claim). Accordingly, the Court grants the Motion to Dismiss

with respect to Plaintiff's Fourteenth Amendment procedural due process claims concerning his

confinement in SHU.

### 4.  *Section 1983 and 1985 Conspiracy Claims*

Plaintiff also brings conspiracy claims against "all Defendants for conspiring to violate

his constitutional rights." Compl. ¶ 86. In seeking to dismiss these conspiracy claims, the State

Defendants argue, in part, that "if a plaintiff cannot sufficiently allege a violation of his rights, it

follows that he cannot sustain a claim of conspiracy to violate those rights." Defs.' Mem. at 22

(quoting Vega, 610 F. Supp. 2d at 203).

Here, since Plaintiff has failed to sufficiently allege a violation of his constitutional rights

with respect to any of the named Defendants, see supra Section IV.C.1–3, it necessarily follows

that he cannot sustain a Section 1983 claim of conspiracy to violate those rights. See generally

Vega, 610 F. Supp. at 202–05 (recognizing the distinction between Section 1983 and Section

1985(3) conspiracy claims). Plaintiff's Section 1985(3) conspiracy claim necessarily fails

because he has not offered any allegation suggesting "some racial, or perhaps otherwise class-

based, invidiously discriminatory animus behind the conspirator[]s['] action[s]." Id. at 204; see

also supra Section IV.C.1. And Section 1985(2) is plainly inapplicable to Plaintiff's factual

allegations, since Section 1985(2) concerns conspiracies to obstruct justice "by force, intimidation, or threat . . . ." 42 U.S.C. § 1985(2). Accordingly, the Court grants the Motion to Dismiss with respect to Plaintiff's conspiracy claims.

### 5.   Claims for Supervisory Liability

Plaintiff also seeks to bring claims against Superintendent Danforth, Superintendent Kirkpatrick, Superintendent Miller, the unnamed CORC members, and "Jane/John Doe" under two theories of supervisory liability: (1) "deliberate indifference" to Plaintiff's constitutional rights, and (2) "negligent . . . superv[ision] . . . ." Compl. ¶ 87. In seeking dismissal of these claims, the State Defendants contend that "[a] claim that a supervisor inadequately supervised [an] individual officer is actionable only if the individual officer committed a constitutional violation." Defs.' Mem. at 24 (citation omitted).

Plaintiff appears to rely on two theories of supervisory liability that the Second Circuit articulated in Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995), which were thrown into doubt by the Supreme Court's decision in Iqbal, 556 U.S. at 676, and ultimately rejected by the Second Circuit in Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) ("We . . . hold[] that after Iqbal, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" (quoting Iqbal, 556 U.S. at 676)). Accordingly, the Court grants the Motion to Dismiss with respect to Plaintiff's claims for supervisory liability.

### 6.   Consequences of Dismissal

Finally, the State Defendants ask this Court to dismiss the Complaint "without leave to amend." Defs.' Reply at 5. While they acknowledge that "*pro se* plaintiffs are generally granted leave to amend at least once," they argue that "the problems with . . . Plaintiff's causes of action

are substantive," and thus "repleading would be futile and should be denied." Id. (emphasis in original) (citing Cuoco v. Moritsugu, 222 F.3d 99, 122 (2d Cir. 2000)).

While the Court agrees that it would necessarily be futile to allow for Plaintiff to replead his supervisory liability claims, see supra Section IV.C.5, his Section 1985(2) claims, see supra Section IV.C.4, and his requests for injunctive and prospective declaratory relief, see supra Section IV.B, the Court is unsure whether the same can be said for Plaintiff's other claims. Accordingly, the Court dismisses Plaintiff's supervisory liability claims, his Section 1985(2) claims, and his requests for injunctive and prospective declaratory relief with prejudice, but otherwise orders the dismissal of Plaintiff's claims to be without prejudice.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Appeal (Dkt. No. 19) is **DENIED**; and it is further

**ORDERED**, that the State Defendants' Motion to Dismiss (Dkt. No. 15) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, the State Defendants' Motion to Dismiss (Dkt. No. 15) on collateral estoppel grounds is **DENIED with leave to renew** at a later date; and it is further

**ORDERED**, that Plaintiff's requests for injunctive and prospective declaratory relief, on behalf of himself and others similarly situated, is **DISMISSED with prejudice** for lack of subject matter jurisdiction; and it is further

**ORDERED**, that Plaintiff's supervisory liability and Section 1985(2) claims are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted; and it is further

**ORDERED**, that the remainder of Plaintiff's claims are **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted; and it is further

**ORDERED**, that should Plaintiff wish to file an amended complaint, he must seek leave to do so from the Honorable Miroslav Lovric, United States Magistrate Judge, **within forty-five (45) days** of this Memorandum-Decision and Order, in compliance with Local Rule of Practice 7.1(b); and it is further

**ORDERED**, that if Plaintiff does not seek leave to file an amended complaint **within forty-five (45) days** of this Memorandum-Decision and Order, the Court will direct the Clerk of the Court to close this action; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on all the parties, in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:       March 31, 2023
             Albany, New York

LAWRENCE E. KAHN
United States District Judge